1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11   TIMORSHAH ASMAI,                        No.  2:14-CV-2619-TLN-AC

12              Plaintiff,

13        v.                                 **ORDER**

14   JEH JOHNSON, DEPARTMENT OF
     HOMELAND SECURITY, ET AL.,
15
16              Defendants.

17

18        This matter is before the Court pursuant to Defendants Jeh Johnson, Eric H. Holder, Jr.,

19   James Comey, Leon Rodriguez, and Mari-Carmen Jordan's (collectively referred to as

20   "Defendants") Motion to Dismiss for Lack of Jurisdiction, *in the alternative*, Motion for

21   Summary Judgment.  (ECF No. 13.)  Plaintiff Timorshah Asmai ("Plaintiff") has filed an

22   opposition (ECF No. 16), to which Defendants have replied (ECF No. 19).  The Court has

23   carefully considered the arguments raised by the parties and for the reasons set forth hereby

24   DENIES Defendants' motion.

25        **I.      FACTUAL BACKGROUND**

26        Plaintiff filed a complaint for writ of mandamus on November 7, 2014.  (ECF No. 1.)  In

27   which he alleges as follows: Plaintiff and his wife and daughter entered the U.S. as refugees from

28
                                        1

1   Afghanistan on December 22, 1999.  (ECF No. 1 at ¶ 11.)  On April 8, 2001, Mr. Asmai

2   submitted a Form I-485, Application to Adjust to Permanent Resident Status.  (ECF No. 1 at ¶

3   13.)  During the period of time that Plaintiff's application has been unadjudicated, his wife had

4   three children, all born in the U.S., and his wife and oldest child became U.S. citizens.  (ECF No.

5   1 at ¶ 15.)

6         Plaintiff has made numerous inquiries to the Department of Homeland Security ("DHS")

7   regarding his application for adjustments of status, and they have sometimes gone unanswered,

8   and other times have resulted in contradictory responses.  (ECF No. 1 at ¶ 16.)  In September

9   2010, in response to a telephonic inquiry, Plaintiff was told that his case was on hold because of

10   INA § 212(a)(3)(B) ("Terrorist Activities"), although there was no indication given as to which

11   subsection of this law would apply to Plaintiff.  (ECF No. 1 at ¶ 18.)  Plaintiff alleges that a

12   thorough review of the entire statute and his history reveals that nothing in this statute applies to

13   him.  (ECF No. 1 at ¶ 18.)  In a letter dated September 30, 2011, Congressman Daniel Lungren

14   responded to Plaintiff's request for help by stating that his office initiated an inquiry to the United

15   States Citizenship and Immigration Services ("USCIS") and was informed that Plaintiff's case "is

16   still pending clearance of the routine security checks."  (ECF No. 1 at ¶ 17.)

17         Since filing this suit, Plaintiff was informed in January 2015, that he is barred from

18   adjustment of status for engaging in combat on behalf of a group called Dostum's Forces, which

19   is considered as a Tier III terrorist organization.  Thus, his application was put on hold and will

20   not be executed unless or until an exception to the terrorist-related inadmissibility standards is

21   created.  Plaintiff responded with a sworn statement and supporting documents explaining that: he

22   had never worked on behalf of Dostum' s Forces; he had only worked as an employee of the

23   Afghanistan Air Force when he was fighting the Taliban; during the time period Plaintiff is

24   accused of working for Dostum's Forces he was working exclusively as a pilot in the Afghanistan

25   Air Force; and he explained how the notes that were attached to his 1999 application for refugee

26   status—made by someone other than himself in a language he could not, at the time, read or

27   write—could have contained the misinformation that he was connected to Dostum's forces.  (*See*

28   Pl.'s Exs. K, L and M in Supp. of Opp., ECF No. 16-1.)   DHS sent a letter stating that Plaintiff's

1    explanation was not credible and that Plaintiff's assertions were factually inaccurate.  (Supp.

2    Canaan Decl., ECF No. 13-2 at ¶ 4.)

3           Plaintiff's application is still pending after a period of almost fifteen years, and thus

4    Plaintiff seeks an order from this Court requiring Defendants to adjudicate Plaintiff's application

5    for adjustment of status.  Defendants have filed the instant Motion to Dismiss for Lack of

6    Jurisdiction, *in the alternative*, Motion for Summary Judgment.  (ECF No. 13.)

7    **II.    LEGAL STANDARDS**

8               A.   Motion to Dismiss

9           A party may move to dismiss a claim for lack of subject matter jurisdiction.  Fed. R. Civ.

10   P. 12(b)(1).  "When subject matter jurisdiction is challenged under Federal Rule of [Civil]

11   Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the

12   motion."  *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001)

13   (abrogated on other grounds by *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181, 175 L.Ed.2d

14   1029 (2010)).  "'Unless the jurisdictional issue is inextricable from the merits of a case, the court

15   may determine jurisdiction on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1)[.]'"

16   *Robinson v. U.S.*, 586 F.3d 683, 685 (9th Cir.2009) (internal citations omitted).  If the court

17   determines at any time that it lacks subject matter jurisdiction "the court must dismiss the action."

18   Fed. R. Civ. P. 12(h)(3).

19          In addition to pleading valid jurisdiction, a plaintiff must also allege facts giving rise to a

20   case or controversy which is "ripe" for adjudication.  *See United States Nat'l Bank of Or. v.*

21   *Indep. Ins. Agents of Am.*, 508 U.S. 439, 113 S. Ct. 2173, 124 L.Ed.2d 402 (1993).  A court's

22   subject matter jurisdiction is limited to matters "ripe" for adjudication, and if a case is not ripe,

23   the court should dismiss it.  Fed. R. Civ. P. 12(b)(1); *Chandler v. State Farm Mutual Automobile*

24   *Insurance Co.*, 598 F.3d 1115, 1121, 1122 (9th Cir. 2010).

25              B.   Summary Judgment

26          Summary judgment is appropriate when the moving party demonstrates no genuine issue

27   as to any material fact exists, and therefore, the moving party is entitled to judgment as a matter

28   of law.  Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under

1   summary judgment practice, the moving party always bears the initial responsibility of informing

2   the district court of the basis of its motion, and identifying those portions of "the pleadings,

3   depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

4   which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.*

5   *Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof

6   at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

7   solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at

8   324 (internal quotations omitted). Indeed, summary judgment should be entered against a party

9   who does not make a showing sufficient to establish the existence of an element essential to that

10   party's case, and on which that party will bear the burden of proof at trial.

11          If the moving party meets its initial responsibility, the burden then shifts to the opposing

12   party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec.*

13   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities*

14   *Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual

15   dispute, the opposing party may not rely upon the denials of its pleadings, but is required to

16   tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

17   support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must

18   demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

19   suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

20   the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

21   the nonmoving party. *Id.* at 251–52.

22          In the endeavor to establish the existence of a factual dispute, the opposing party need not

23   establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

24   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

25   trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to

26   'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

27   trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963

28   amendments).

4

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* at 587.

## III.   ANALYSIS

The Court first addresses Defendants' assertions that the Court lacks subject matter jurisdiction and then turns to Defendants' summary judgment arguments.

### A.   Jurisdiction

Defendants assert that this Court lacks jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii). (ECF No. 13 at 7.)  The Court disagrees.  That section provides:

> Notwithstanding any other provision of law . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under [8 U.S.C. §§ 1151–1378] to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of [asylum-based] relief under section 1158(a) of this title.

U.S.C. § 1252(a)(2)(B)(ii).  Defendants argue that the Ninth Circuit, in *Spencer Enterprises, Inc. v. U.S.*, 345 F.3d 683, 689 (9th Cir. 2003), held that this statute specifically applies to discretionary acts of the INA/USCIS.  (ECF No. 13 at 7.)  Defendants assert that the adjudicatory hold on Plaintiff's application is necessary to allow the government to determine whether Plaintiff is eligible for the terrorism-related inadmissibility exemption under 8 U.S.C. § 1252(d)(3)(B)(i). (ECF No. 13 at 8.)  Therefore, Defendants reason, their authority to grant adjustment of status is

1  discretionary and the Court is prohibited from reviewing USCIS's decision to hold Plaintiff's

2  adjustment application.  (ECF No. 13 at 8.)

3      Defendants are correct that 8 U.S.C. § 1252(a)(2)(B)(ii) bars the court from reviewing a

4  final agency decision on an adjustment application.  However, the statute does not prevent review

5  of an agency's unreasonable delay in making a decision.  According to *Kucana v. Holder*, 558

6  U.S. 233, 246–47 (2010), "both clauses [of § 1252(a)(2)(B)] convey that Congress barred court

7  review of discretionary decisions only when Congress itself set out the Attorney General's

8  discretionary authority in the statute."  *See also id*. at 839 ("Any lingering doubt about the proper

9  interpretation of § 1252(a)(2)(B) would be dispelled by the familiar principle of statutory

10  construction: the presumption favoring judicial review of administrative action."); *Wong v.*

11  *United States*, 373 F.3d 952, 963 (9th Cir. 2004) ("§ 1252(a)(2)(B)(ii) precludes jurisdiction only

12  over decisions as to which discretionary authority is 'specified' by statute, not all discretionary

13  decisions.").

14      Here, the decision Plaintiff asks the Court to review is not the grant or denial of his

15  application for adjustment; rather, it is the refusal to take any action on that application. While the

16  Secretary has discretion to decide the outcome of an adjustment application, the authority to not

17  act on an application is not conferred by any statute.  The Government's own authority recognizes

18  this distinction:

19          Based on the narrow construction to be given the jurisdiction-
           stripping provision of the statute, and its language precisely limiting
20          the discretion granted, the Court therefore finds that 8 U.S.C. §
           1252(a)(2)(B)(ii) does not deprive the Court of jurisdiction to hear
21          an allegation that the determination of an application for adjustment
           of status has been unlawfully withheld. While the ultimate decision
22          to grant or deny an application for adjustment of status is
           unquestionably discretionary, there exists a non-discretionary duty
23          to act on and process the application.

24  *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1165 (N.D. Cal. 2007).  Thus, a failure to act on an

25  adjustment application falls within the APA's default rule: "With due regard for the convenience

26  and necessity of the parties or their representatives and within a reasonable time, each agency

27  shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).[1]

28  ───────────────────
   [1]   The Government relies on the Ninth Circuit's recent decision in *Hassan v. Chertoff*, 543 F.3d 564 (9th

1   Defendants further argue that its decision to exempt Plaintiff from inadmissibility under 8

2   U.S.C. § 1182(a)(3)(B)(i) is a discretionary act which is not subject to judicial review. Aliens who

3   have engaged in terrorist activity are deemed inadmissible and ineligible to receive visas to enter

4   the United States pursuant to 8 U.S.C. § 1182(a)(3)(B)(i)(I). However, the statute provides an

5   exception to this rule:

> The Secretary of State, after consultation with the Attorney General and the Secretary of Homeland Security, or the Secretary of Homeland Security, after consultation with the Secretary of State and the Attorney General, may determine in such Secretary's sole unreviewable discretion that subsection (a)(3)(B) shall not apply with respect to an alien within the scope of that subsection or that subsection (a)(3)(B)(vi)(III) shall not apply to a group within the scope of that subsection.... Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review such a determination or revocation except in a proceeding for review of a final order of removal pursuant to section 1252 of this title, and review shall be limited to the extent provided in section 1252(a)(2)(D).

14   8 U.S.C. § 1182(d)(3)(B)(i).

15   Defendants argue that "the procedure for creating a terrorism-related inadmissibility

16   exemption under 8 U.S.C. § 1182(d)(3)(B)(ii) is a deliberative one that Congress did not intend to

17   occur quickly." (ECF No. 13 at 8.) Therefore, Defendants reason, "Congress intended that the

18   exemption determination be made via agency action rather than through judicial oversight."

19   (ECF No. 13 at 9.)

20   The Court finds a similar flaw in Defendants' reliance on this statute as it does with 8

21   U.S.C. § 1252(a)(2)(B)(ii). 8 U.S.C. § 1182(d)(3)(B)(ii) only precludes judicial review of

22   decisions to create exemptions to terrorism-related inadmissibility. Here, Plaintiff does not

23   challenge an exemption. Instead, Plaintiff challenges the lack of decision by USCIS as to whether

24   an exemption should be made. "Nothing in the statute governing adjustment of an asylee's status,

---

26   Cir.2008), arguing that it compels the application of 8 U.S.C. § 1252(a) (2)(B)(ii) in this case. (ECF No. 13 at 8.) The Government cites the court's reasoning in *Hassan* that, "Because the government denied Hassan's application for adjustment, in part, as a matter of discretion, the district court lacked jurisdiction to review that claim." 534 F.3d

27   at 566. The reliance is misplaced, as *Hassan* dealt with the denial of an application for adjustment, an action which satisfies the conditions for preclusion of review, not the decision to take no action.

7

8 U.S.C. § 1159(b), or the statute governing exemptions for terrorism-related inadmissibility, 8 U.S.C. § 1182(d)(3)(B)(i), vests the Secretary of Homeland Security or the Attorney General with the discretion to place applications for adjustment on indefinite hold without being subjected to judicial review." *Khan v. Scharfen*, No. 08-1398 SC, 2009 WL 941574, at *6 (N.D. Cal. Apr. 6, 2009). For these reasons, the Court finds that it has subject-matter jurisdiction and DENIES Defendants' motion to dismiss Plaintiff's complaint for lack of jurisdiction. Thus, the Court turns to Defendants' summary judgment arguments.

      B. <u>Summary Judgment</u>

      Plaintiff's complaint seeks relief in the form of mandamus pursuant to 28 U.S.C. § 1361 to compel Defendants to adjudicate his application. (ECF No. 1.) In support of his application, Plaintiff asserts that Defendants are required under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, to make a determination on his application within a reasonable time. (ECF No. 1 at ¶ 23.)

      Defendants move for summary judgment on Plaintiff's complaint, arguing that, pursuant to the six-factor test adopted by the Ninth Circuit for determining when an agency delay is unreasonable, the Court should determine that Defendants' delay in adjudicating Plaintiff's application is reasonable. (ECF No. 13 at 11.)

      The APA "permits a citizen suit against an agency when an individual has suffered 'a legal wrong because of agency action' or has been 'adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Rattlesnake Coalition v. U.S. Envtl. Prot. Agency*, 509 F.3d 1095, 1103 (9th Cir. 2007) (quoting 5 U.S.C. § 702). 5 U.S.C. § 706(1) authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed." To be granted relief under Section 706(1), a plaintiff must first show that an agency delayed or withheld a discrete action that the agency was legally required to take. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) ("a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*" (emphasis in original)). A plaintiff must then further demonstrate that the agency unreasonably delayed or unlawfully withheld processing its decision. *See* 5 U.S.C. § 555(b) ("with due regard

1   for the convenience and necessity of the parties or their representatives and within a reasonable

2   time, each agency shall proceed to conclude a matter presented to it"); 5 U.S.C. § 706(1).

3          Here, the parties agree that USCIS has placed Plaintiff's application on hold and has

4   therefore delayed a determination on the application.  The Court has already concluded that

5   USCIS has a nondiscretionary duty to adjudicate Plaintiff's application within a reasonable period

6   of time.  *See supra* Section III.A.  Therefore, the Court need only determine whether the delay in

7   adjudication of Plaintiff's application is reasonable.  To do so, the Court applies what are known

8   as the *TRAC* factors:

9

10         (1) the time agencies take to make decisions must be governed by a "rule of
           reason"[;] (2) where Congress has provided a timetable or other indication of the
11         speed with which it expects the agency to proceed in the enabling statute, that
           statutory scheme may supply content for this rule of reason [;] (3) delays that
12         might be reasonable in the sphere of economic regulation are less tolerable when
           human health and welfare are at stake [;] (4) the court should consider the effect of
13         expediting delayed action on agency activities of a higher or competing priority[;]
           (5) the court should also take into account the nature and extent of the interests
14         prejudiced by the delay[;] and (6) the court need not "find any impropriety lurking
           behind agency lassitude in order to hold that agency action is unreasonably
15         delayed."

16   *Independence Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 507 n.7 (9th Cir. 1997) (quoting

17   *Telecomms. Research & Action v. F.C.C.*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*"))

18   (modifications in original).

19                 i.      *Factor 1: Rule of Reason*

20         Defendants have a duty to adjudicate Plaintiff's application for adjustment within a

21   reasonable amount of time.  *Kousar v. Mueller*, 549 F. Supp. 2d 1194, 1198 (N.D. Cal. 2008);

22   *Soneji v. Dep't of Homeland Sec.*, 525 F. Supp. 2d 1151, 1156 (N.D. Cal. 2007); *Alibeik v.*

23   *Chertoff*, No. C-07-01938 EDL, 2007 WL 4105527, at *5 (N.D. Cal. Nov. 16, 2007).  "What

24   constitutes an unreasonable delay in the context of immigration applications depends to a great

25   extent on the facts of the particular case."  *Gelfer v. Chertoff*, No. C06-06724 WHA, 2007 WL

26   902382, at *2 (N.D. Cal. Mar. 22, 2007) (quoting *Yu v. Brown*, 36 F.Supp.2d 922, 934 (D.N.M.

27   1999)).

28         On April 8, 2001, Plaintiff applied for Permanent Resident Status.  (ECF No. 1 at ¶ 11.)

1    Plaintiff asserts that he did not cause the delay in the adjudication of his application and has

2    waited over 14 years so far to receive a decision.  (ECF No. 16 at 10.)  He further alleges that the

3    delay is unreasonable because Defendants are indefinitely delaying adjudication of his

4    application.  (ECF No. 16 at 10–11.)  Plaintiff contends that "by simply asserting that his case is

5    on hold indefinitely, the Defendants are insulating their decision from judicial review."  (ECF No.

6    16 at 11–12.)

7         Defendants argue that the Court should find that the rule of reason factor weighs in their

8    favor because the memorandum issued by USCIS instructed adjudicators to put on hold certain

9    adjustment applications that "could potentially benefit from a future exercise by the Secretary" of

10   her authority to exemption those applications otherwise subject to terrorist-related inadmissibility.

11   (ECF No. 13 at 12.)  Defendants argue that putting adjudication of Plaintiff's application on hold

12   is consistent with the USCIS memorandum and inures to Plaintiff's benefit because his

13   application would otherwise be denied: "The current hold placed on adjudication of Asmai's

14   application results directly from the CAA and USCIS's CAA-based policy – and it inures to his

15   benefit – and is thus governed by a rule of reason as the first TRAC factor requires".  (ECF No.

16   13 at 12.)  Defendants further argue that "the exemption process is not a quick one" because it

17   requires consultation with the Secretary of State, the U.S. Attorney General, and the Secretary of

18   Homeland Security, as well as consultation with various law enforcement and intelligence

19   agencies.  (ECF No. 13 at 12.)

20        The Court is cognizant that the exemption process is a careful and time-consuming one.

21   However, Defendants analysis does not explain how these concerns would be undermined by

22   expediting the adjudication of Plaintiff's application.  As Plaintiff points out

23            the mere fact that USCIS created an official policy not to adjudicate
              applications like Mr. Asmai's does not mean that there is a "rule of
24            reason" governing the policy.  If that were true, then Defendants
              could issue a memorandum whenever they did not want to comply
25            with the APA, and then claim that they were governed by a "rule of
              reason."
26

27   (ECF No. 16 at 11.)  This Court agrees.  The APA is not intended to permit agencies to define the

28   reasonability of their actions by issuing their own memoranda.  Defendants' decision to put the

1    adjudication of Plaintiff's application on hold indefinitely does not weight in favor of the Court

2    finding this delay reasonable. *Mugomoke v. Curda*, No. 2:10-CV-02166 KJM, 2012 WL 113800,

3    at *7 (E.D. Cal. Jan. 13, 2012) ("But for defendants to hold the application indefinitely in case

4    they might, at some unspecified point in the future, consider an exemption does not constitute a

5    "rule of reason" that allows this court to find the delay reasonable.")  While the length of the

6    delay alone is not dispositive, Defendants do not allow a fact-specific inquiry because they

7    provide no analysis to indicate why a delay is required in this instance and have made no showing

8    that they might adjudicate Plaintiff's application at any particular time in the future.  *Qureshi v.*

9    *Napolitano*, No. C-11-05814-YGR, 2012 WL 2503828, at *4 (N.D. Cal. June 28, 2012).

10          Moreover, the Court finds that the length of the delay is excessive.  Most of the case law

11    finding delays in deciding applications reasonable have dealt with time periods consisting of four,

12    five, or six years.  *See Liben v. Mayorkas*, No. 11-cv-3472, 2013 WL 884296, at *7 (D. Minn.

13    Mar. 8, 2013) (five-year delay not unreasonable); *Bemba v. Holder*, 930 F. Supp. 2d 1022, 1029–

14    34 (E.D. Mo. 2013) (six-year delay reasonable); *Senbeta v. Holder*, NO. 12-cv-1793, 2013 WL

15    2936316 (D. Minn. June 14, 2013) (four-year delay—but eleven-year delay from the initial filing

16    of the I-485 application—reasonable). Defendants cite to only one case where a district court in

17    Minnesota found a twelve year delay to be reasonable, but a closer reading of that case indicates

18    that, at the time the order was written, the government had only had eight months to assess the

19    nature of the defendant's involvement in the terrorist-related organization.  (*See* Reply, ECF No.

20    19 at 6 (citing *Oljirra v. Mayorkas*, No. 12-CV-0994 PJS/JSM, 2013 WL 1490261, at *4 (D.

21    Minn. Apr. 11, 2013).)  Alternatively, a number of district courts have found long delays in

22    adjudication to be unreasonable.  *See Qureshi*, 2012 WL 2503828, at *5 (finding five-year delay

23    unreasonable); *Ahary v. Curda*, No. 11-02992 GEB, 2012 WL 1641411 (E.D. Cal. May 9, 2012)

24    (finding an eleven-year delay unreasonable); *Mugomoke*, 2012 WL 113800 (finding a seven-year

25    delay unreasonable); *Islam v. Heinauer*, 32 F.Supp.3d 1063 (N.D. Cal. Mar. 7, 2014) (finding that

26    a five-year delay was unreasonable); *Al Karim v. Holder*, No. 08–cv–00671–REB, 2010 WL

27    1254840, at *4 (D.Colo. Mar.29, 2010) (eight-year delay unreasonable); *Al-Rifahe v. Mayorkas*,

28    776 F. Supp. 2d 927, 936 (D. Minn. 2011) (thirteen-year delay unreasonable); *Al Shamsawi v.*

*Holder*, No. 2:10–CV–194 CW, 2011 WL 1870284, at *4 (six-year delay unreasonable).  While length of delay alone is not dispositive to the inquiry, the fact remains that an almost 15 year delay weighs substantially against a finding of reasonability.

The Court finds that Defendants have failed to put forth specific reasoning for the delay in adjudication of Plaintiff's application and that, as compared to other cases to similar to Plaintiff's, the extent of delay in adjudication is extensive.  Therefore, the Court finds that the first factor weighs in favor of the Plaintiff.

ii.      *Factor 2: Congressionally Mandated Timetable*

Both parties agree that there is no specific timetable mandated by Congress for the adjudication of adjustment applications.  (ECF No. 13 at 12 & ECF No. 16 at 13.)  "The agency therefore must adjudicate [Plaintiff's] application in a reasonable amount of time."  *Mugomoke*, 2012 WL 113800, at *7 (dispensing with the second factor where parties agree there is no timetable for the review of adjustment applications); *see also TRAC*, 750 F.2d at 80 ("[W]here Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason.").  Therefore, the Court does not consider this *TRAC* factor.

iii.     *Factors 3 & 5: Impact on Health and Human Welfare & Prejudice of*
           *Delay*

The Court addresses the third and fifth TRAC factors together by assessing the injury caused to Plaintiff by indefinite delay of adjudication.  *See Mugomoke*, 2012 WL 113800, at *8. Defendants argue that USCIS is exercising its discretion under the law in favor of Plaintiff, whose application would be denied if not granted future exemption.  (ECF No. 13 at 13.)  Defendants further argue that the government's interests in national security and the issuance of potential exemptions outweigh Plaintiff's interest in adjudication.  (ECF No. 13 at 13–14.)

Plaintiff responds with two arguments.  First, Plaintiff explains the disadvantages of his current status as an asylee and recounts the numerous advantages of receiving lawful permanent resident status.  (ECF No. 16 at 12.)  Plaintiff further states that, even if his application was denied, he would be in a better position than if his application remained on hold because he

would be able to seek judicial review of his application and would be permitted to reapply in the future.  (ECF No. 16 at 12–13.)

The parties appear to be in agreement that USCIS would deny Plaintiff's application if a determination was made at this time.  (ECF No. 13 at 2 ("Consequently, if USCIS were required to complete adjudication of Asmai's application today, it would likely deny the case under 8 U.S.C. § 1182(a)(3)(B)."); ECF No. 16 at 3 (in response to Plaintiff's assertions that he was not a member of Dostrum's Forces and thus should not be denied Permanent Resident status "Mr. Canaan responded that CIS did not find Mr. Asmai's explanation credible, and further, that it considered his assertions factually inaccurate.").)  Therefore, the Court does not consider Plaintiff's arguments regarding the benefits of lawful permanent resident status to weigh in his favor, as it seems certain he will not receive that status.  Nor can the Court find in favor of Defendants, who argue that placing the application on hold delays Plaintiff's denial.

First, as Plaintiff points out, he does not need to be protected from a denial because he would be permitted to maintain his asylee status and could simply reapply in the future.  (ECF No. 16 at 12.)  More importantly, however, the Court finds that Plaintiff is damaged by this unreasonable delay and the insecurity of his immigration status.  *See Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1145 (D. Ariz. 2008) (finding that economic and human welfare interests are implicated in the delay in processing an I–485 adjustment application); *Al Karim*, 2010 WL 1254840, at \*4 ("Plaintiff evidently understands that his application may be denied, but the consequences of the indefinite and unreasonable delay in adjudication of his application are assuredly equally as negative.").  Therefore, the Court finds that this factor weighs in favor of Plaintiff.

### iv.    Factor 4: Agency Activities

The Ninth Circuit instructs that "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority."  *Independence Mining Co., Inc. v. Babbitt*, 105 F.3d at 507 n.7.   Defendants argue that Plaintiff's "demand for immediate adjudication of his adjustment application directly challenges the agency's process for exercises of discretionary exemption authority."  (ECF No. 13 at 14.)  Plaintiff responds, and the Court

1  concurs, that Defendants "conflate their non-discretionary duty to adjudicate the applications

2  within a reasonable period of time with the discretionary decision to apply an exemption…."

3  (ECF No. 16 at 15.)  The Court has determined that USCIS is lawfully required to adjudicate

4  Plaintiff's application and that the Court is permitted to compel action under the APA. "If the

5  only effect of expediting the application is the loss of an authority that the court has determined is

6  *ultra vires*, this factor does not militate in [Defendants'] favor." *Mugomoke*, 2012 WL 113800, at

7  *9.

8       *v.*  *Factor 6: Impropriety or Bad Faith*

9     Plaintiff does not allege any impropriety or bad faith here and the Court finds no grounds

10 to determine any.  Regardless, "the court need not 'find any impropriety lurking behind agency

11 lassitude in order to hold that agency action is unreasonably delayed.'" *TRAC*, 750 F.2d at 80

12 (D.C. Cir. 1984) (citing *PCHRG v. FDA*, 740 F.2d 21, 34 (D.C. Cir. 1984)).  Therefore, the Court

13 does not consider this factor in its determination.

14      *vi.*  *Conclusion*

15    The APA instructs that "within a reasonable time, each agency shall proceed to conclude a

16 matter presented to it." 5 U.S.C. § 555.  The law further instructs federal courts to "compel

17 agency action unlawfully withheld or unreasonably delayed…." 5 U.S.C. § 706(1).  Summary

18 judgment should be entered against a party who does not make a showing sufficient to establish

19 the existence of an element essential to that party's case, and on which that party will bear the

20 burden of proof at trial.  *Celotex Corp.*, 477 U.S. 322.

21    Here, the Court has applied the *TRAC* factors as instructed by the Ninth Circuit and finds

22 that a balance of those factors indicates that USCIS unreasonably delayed or unlawfully withheld

23 processing its decision.  A delay of 15 years in processing Plaintiff's adjustment application is

24 presumptively unreasonable.  Defendants have not provided sufficient support with respect to any

25 of the *TRAC* factors for this Court to find such a delay permissible under the APA.  Therefore, the

26 Court hereby DENIES Defendants' motion for summary judgment.

27 ///

28 ///

**IV.    CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss for Lack of Jurisdiction, *in the alternative*, Motion for Summary Judgment (ECF No. 13) is **DENIED.**

**IT IS SO ORDERED.**

Dated: April 19, 2016

_____
Troy L. Nunley
United States District Judge